# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

---

## No.: 24-1117

---

## JOSEPH BUSHRA

### Plaintiff/Appellant

### v.

## MAIN LINE HEALTH, INC.

### Defendant/Appellee

---

## APPELLANT'S BRIEF AND APPENDIX (VOLUME ONE)

---

**An Appeal From The Order Granting Defendant Main Line Health, Inc.'s Motion For Summary Judgment entered in the U.S. District Court For The Eastern District Of Pennsylvania**

---

David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
**Koller Law LLC**
2043 Locust Street, Suite 1-B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com
Attorneys for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ..... 1

STATEMENT OF ISSUES PRESENTED.................................................................... 1

STATEMENT OF THE CASE ...................................................................................... 2

STATEMENT OF RELEVANT FACTS ...................................................................... 2

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................. 6

STATEMENT OF THE STANDARD OF REVIEW .................................................. 6

SUMMARY OF THE ARGUMENT.......................................................................... 10

ARGUMENT................................................................................................................ 12

I.   APPELLEE WAS NOT ENTITLED TO SUMMARY JUDGMENT ON
APPELLANT'S FAILURE TO ACCOMMODATE CLAIMS BECAUSE
GENUINE DISPUTES OF MATERIAL FACT EXISTED AS TO WHETHER
APPELLE MET ITS BURDEN OF PROVING AN UNDUE HARDSHIP AS A
MATTER OF LAW..............................................................................................12

II.  THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT
AGAINST APPELLANT ON HIS DISPARATE TREATMENT CLAIMS
SINCE APPELLANT PRESENTED ADMISSIBLE EVIDENCE OF OTHERS
OUTSIDE HIS PROTECTED CLASS BEING TREATED MORE
FAVORABLY. ...................................................................................................21

III. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S
RETALIATION CLAIMS BECAUSE APPELLANT PRESENTED A *PRIMA
FACIE* CASE OF RETALIATION UNDER TITLE VII AND THE PHRA. .....24

CONCLUSION............................................................................................................ 26

COMBINED CERTIFICATIONS............................................................................... 27

CERTIFICATE OF SERVICE ................................................................................... 29

APPENDIX TABLE OF CONTENTS......................................................................... 30

iii

# TABLE OF AUTHORITIES

**Cases**

*United States Supreme Court*

Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970) ..................................................8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...................................7, 8, 15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...........................................................8

Fallon v. Mercy Catholic Med. Ctr., 877 F.3d 487 (3d Cir. 2017).........................13

Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3d Cir. 2000) ............................24

Giles v. Kearney, 571 F.3d 318 (3d Cir. 2009)...........................................................7

Gleason v. Norwest Mortg., Inc., 243 F.3d 130 (3d Cir. 2001) ..............................15

Groff v. DeJoy, 600 U.S. 447 (2023).......................................................................15

Hunt v. Cromartie, 526 U.S. 541 (1999) ....................................................................8

Tolan v. Cotton, 572 U.S. 650 (2014) .........................................................................7

*Circuit Courts of Appeal*

Armbruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 2001)...........................................9

Cloverland-Green Spring Dairies, Inc. v. Penna. Milk Marketing Bd.,
    298 F.3d 201 (3d Cir. 2002) .............................................................................7

Dinnerstein v. Burlington Cty. College, 764 Fed. App'x 214 (3d Cir. 2019).........21

In re Bressman, 327 F.3d 229 (3d Cir. 2003) ..........................................................14

Kelly v. Drexel Univ., 94 F.3d 102 (3d Cir. 1996)...................................................12

Marzano v. Computer Sci. Corp., Inc., 91 F.3d 497 (3d Cir. 1996)...................9, 10

Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368 (3d Cir. 1991). ......9

Pignataro v. Port Auth. Of N.Y. & N.J., 593 F.2d 265 (3d Cir. 2010). .....................9

Santini v. Fuentes, 795 F.3d 410 (3d Cir. 2015).........................................................8

Sec'y U.S. Dep't. of Labor v. Kwansy, 853 F.3d 87 (3d Cir. 2017) .......................8

Stewart v. Rutgers, 120 F.3d 426(3d Cir. 1997) .......................................................9

U.S. v. 107.9 Acre Parcel of Land in Warren Twp., 898 F.2d 396 (3d Cir. 1990).9

*United States District Courts*

Elizabeth Bushra v. Main Line Health, Inc., Civil Action No. 2:23-cv-01031
  (E.D. Pa.) .........................................................................................................6

Gray v. Main Line Hosps., Inc., 2024 U.S. Dist. LEXIS 26885
  (E.D. Pa. Feb. 15, 2024) ........................................................16, 17, 18, 19, 20

Sowell v. Kelly Servs., Inc., 139 F. Supp. 3d 684 (E.D. Pa. 2015)..........................9

**Statutes**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. §§ 1331 and 1367(a)..................................................................................1

42 U.S.C. § 2000e *et seq.*..........................................................................................1

43 Pa. Cons. Stat. Ann. § 951 ...................................................................................1

**Rules**

Fed. R. Civ. P. 56.................................................................................................1, 8

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Plaintiff/Appellant Joseph Bushra (hereinafter "Appellant") appeals the December 28, 2023, Order from the United States District Court for the Eastern District of Pennsylvania granting the Motion for Summary Judgment, under the provision of Fed. R. Civ. P. 56, of Defendant/Appellee Main Line Health, Inc. (hereinafter "Appellee") on Appellant's claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951, ("PHRA"). The district court had original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367(a), as the action arose under the laws of the United States, and supplemental jurisdiction was invoked for the state law claims. This Honorable Court has appellate jurisdiction under 28 U.S.C. § 1291 because the matter is an appeal from a final decision of the district court.

## STATEMENT OF ISSUES PRESENTED

1) Whether the Trial Court erred in granting summary judgment against Appellant on his failure to accommodate claims under Title VII and the PHRA because it claimed Appellee established an undue hardship even though Appellee never claimed to Appellant it denied his request due to an undue hardship and/or did not present sufficient evidence to establish there was no genuine dispute of material fact as to undue hardship.

1

2) Whether the Trial Court erred in determining that Appellant did not present sufficient comparator evidence to establish that others outside of Appellant's protected class were treated more favorably than Appellant when Appellant demonstrated, and Appellee admitted, that Appellee provided religious accommodations to other physicians who were not the same religious denomination as Appellant, despite them raising the same religious objections as Appellant.

3) Whether the Trial Court erred in determining Appellant did not present a *prima facie* case of retaliation when it decided that no rational juror could find for Appellant on his retaliation claim because the only protected activity Appellant claimed was his request for religious accommodation and appeal of the decision to deny Appellant's religious accommodation request as requesting a religious accommodation is protected activity under Title VII and the PHRA.

## STATEMENT OF THE CASE

## STATEMENT OF RELEVANT FACTS

The facts relevant to this appeal as it relates to Appellant's claims of failure to accommodate his religious accommodation request and retaliation, when taken in the light most favorable to Appellant as the non-moving party during the summary judgment motion, are as follows:

Appellant is a member of the Tenth Presbyterian Church in Philadelphia and

2

worked as an attending physician in the emergency room at Appellee's Lankenau
Medical Center ("Lankenau"). Appx005. Appellant also served as the Campus
Chief of Lankenau's Emergency Department. Appx005. Staffing for Appellee's
emergency departments is provided, via an exclusive services contract, with Main
Line Emergency Medicine Associates, LLC ("MLEMA"), a private practice group.
Appx005-006. MLEMA has employed Appellant since 2003. Appx006. Appellant
became a part owner of MLEMA in 2006. Appx006.

MLEMA charges Appellee for the services performed by its physicians and
remits a portion of those fees to each physician pursuant to MLEMA's Operating
Agreement. Appx006. Physicians in MLEMA are only allowed to work part-time
outside of Appellee if they provide adequate services to Appellee; otherwise, no
such arrangement is permitted. Appx006. Appellee requires MLEMA physicians to
follow its policies and procedures. Appx006. Appellant was required to hold
medical staff membership for Appellee and seek renewal every two years.
Appx006. As a member of the medical staff, Appellant had to comply with
Appellee's medical staff bylaws as well as Appellee's rules, regulations, policies,
and procedures. Appx006.

Appellee adopted a policy on July 15, 2021, mandating that all members of
the medical staff receive COVID-19 vaccination by October 1, 2021. Appx007.
Appellant submitted an application for an exemption from Appellee's COVID-19

3

vaccine mandate as an accommodation for his religious beliefs. Appx007. In his exemption request, Appellant stated that his Christian beliefs prevented him from receiving some but not all vaccines, raising four specific objections: (1) receiving a vaccine developed using fetal cells violated his sincerely held religious belief that human life begins at the moment of conception and would signify his approval of the "unethical means used to develop it"; (2) his  sincerely held religious belief prohibited him from taking action that put him at unnecessary risk of harm; (3) his sincerely held religious beliefs prohibited him from receiving a scare vaccine or booster before someone else who may receive a greater benefit, such as those at higher risk of death than Appellant; and (4) his sincerely held religious belief requires him to act in accordance with his conscience and to violate it would be a sin, therefore based on his stated reasons, receiving the available COVID-19 vaccines would violate his conscious and be a sinful act on his part. Appx007-009.

Appellant's exemption request included a letter from his religious leader which stated that Appellant "would be sinning by violating his conscious before the Lord" and concluded that Appellant's "sincere convictions in respect of vaccines cannot be separated from his convictions as a follower of God, which is his core identity." Appx009.

Appellee's Religious Exemption Committee denied Appellant's exemption request. Appx009. Appellant appealed to Appellee's Appeals Committee, which,

on or about October 19, 2021, held that Appellant had not articulated a sincerely held religious belief and denied Appellant's request. Appx009. Appellee made no mention as to an alleged hardship Appellee would face if it granted Appellant's religious accommodation request. Appx745-746. Appellee informed Appellant he would be placed on administrative suspension if Appellant did not receive a first qualifying dose of a COVID-19 vaccine within fourteen days. Appx009.

Appellant did not obtain a first dose of the COVID-19 vaccine and was placed on administrative suspension from the medical staff at Appellee on November 15, 2021. Appx009; Appx751. Although remaining a part-owner of MLEMA, Appellant was no longer a campus chief and could no longer care for patients at Appellee. Appx009.

## PROCEDURAL HISTORY

Appellant initiated this action against Appellee in District Court via Complaint filed on or about March 20, 2023, asserting claims of violations of Title VII and the PHRA for failing to accommodate Appellant's request for religious accommodation and retaliation. Appx025, Appx028-043 Appellee filed an Answer with Affirmative Defenses on or about May 30, 2022. Appx026, Appx044-063. At the close of discovery, Appellee filed a Motion for Summary Judgment. Appx026. On December 28, 2023, Judge Harvey Bartle III issued a Memorandum Opinion and Order granting Appellee's motion for summary judgment and dismissing all

claims with prejudice. Appx003-024.

Appellant timely filed a Notice of Appeal of the December 28, 2023 Order and Opinion with the Trial Court on January 18, 2024. Appx001-002.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This instant case is before this Court for the first time. Counsel is unaware of any related case decided or pending before this Court. Dr. Elizabeth Bushra, Appellant's Wife, has a separate matter pending based on claims of failure to hire/religious discrimination and retaliation, also against MLH, based on her request for a religious accommodation exempting her from the same COVID-19 vaccine requirement, but the matters proceeded separately and are not so related that one relies upon the other and have a separate set of operative facts related to the alleged denial of accommodation and failure to hire. That matter is pending ruling on MLH's motion for summary judgment, which is fully briefed. See Elizabeth Bushra v. Main Line Health, Inc., Civil Action No. 2:23-cv-01031, proceeding before the Honorable Wendy Beetlestone in the Eastern District of Pennsylvania.

## STATEMENT OF THE STANDARD OF REVIEW

An appellate court's review of a grant of summary judgment is plenary, with the appellate court applying the same test that the district court used in determining whether summary judgment was proper. Giles v. Kearney, 571 F.3d 318, 322 (3d

Cir. 2009) In <u>Tolan v. Cotton</u>, the Supreme Court reversed an appellate court for "fail[ing] to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" <u>Tolan v. Cotton</u>, 572 U.S. 650, 651 (2014) (<u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)). The "'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" <u>Tolan</u>, 572 U.S. at 656 (<u>quoting</u> <u>Anderson</u>, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . ." <u>Anderson</u>, 477 U.S. at 255.

Put differently, the non-moving party is *not* required to produce conclusive evidence. <u>See</u> <u>Cloverland-Green Spring Dairies, Inc. v. Penna. Milk Marketing Bd.</u>, 298 F.3d 201, 217 (3d Cir. 2002). "Instead, it need only offer sufficient evidence for a reasonable jury to find the facts necessary for a decision in its favor." <u>Id.</u>

The above safeguards should be strictly followed since summary judgment deprives the non-movant of the chance to present her case to a jury of her peers. As Justice Black observed:

The right to confront, cross-examine and impeach adverse

> witnesses is one of the most fundamental rights sought to be
> preserved by the Seventh Amendment provision for jury trials
> in civil cases. The advantages of trial before a live jury with
> live witnesses, and all the possibilities of considering the
> human factors, should not be eliminated by substituting trial
> by affidavit and the sterile bareness of summary judgment.

Adickes v. S. H. Kress & Co., 398 U.S. 144, 176 (1970) (Black, J., concurring).

One of the key protections for the non-moving party is the basic rule that a

defendant's state of mind typically should not be decided on summary judgment.

See, e.g., Hunt v. Cromartie, 526 U.S. 541 (1999) (error for the District Court to

resolve the disputed fact of motivation at the summary judgment stage); Anderson,

477 U.S. at 255.

Summary judgment is only appropriate where, construing all evidence in

the light most favorable to the nonmoving party, "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Sec'y

U.S. Dep't. of Labor v. Kwansy, 853 F.3d 87, 90 (3d Cir. 2017) (quoting Fed. R.

Civ. P. 56(a)). It is not the Court's job to "weigh the evidence and determine the

truth of the matter, but only to determine whether there is a genuine issue for trial."

Id. (quoting Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015)).

A party moving for summary judgment bears the initial burden of informing

the court of the basis for its motion and identifying aspects of the record which it

believes demonstrates the absence of a genuine dispute of material fact. Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the party makes this initial

showing, the burden shifts to the nonmoving party to demonstrate that there is, actually, a genuine dispute of material fact. U.S. v. 107.9 Acre Parcel of Land in Warren Twp., 898 F.2d 396, 398 (3d Cir. 1990). The nonmoving party, in meeting its burden, is entitled to all reasonable inferences in its favor. Pignataro v. Port Auth. Of N.Y. & N.J., 593 F.2d 265, 268 (3d Cir. 2010).

In determining the existence of a genuine dispute as to any material fact, the "court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 2001). Summary judgment also must be denied if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed. Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368 (3d Cir. 1991).

In employment discrimination cases, the summary judgment standard "is applied with added rigor . . . [because] intent and credibility are crucial issues." Sowell v. Kelly Servs., Inc., 139 F. Supp. 3d 684, 690 (E.D. Pa. 2015) (quoting Stewart v. Rutgers, 120 F.3d 426, 431(3d Cir. 1997)). Given the inherent evidentiary question of credibility of an employer's stated reason and whether that reason is pretext, summary judgment is rarely appropriate in this type of case. See id. (citing Marzano v. Computer Sci. Corp., Inc., 91 F.3d 497, 509 (3d Cir. 1996)). Simply pointing to evidence which calls into question the defendant's

intent raises an issue of material fact which, if genuine, is sufficient to preclude

summary judgment. <u>Marzano</u>, 91 F.3d at 509-10.

## <u>SUMMARY OF THE ARGUMENT</u>

Appellee was not entitled to summary judgment in its favor, and Appellant

respectfully submits this Court should reverse the Trial Court's grant of summary

judgment and remand this matter for trial. The Trial Court reasoned that Appellant

failed to present sufficient evidence of comparators for the purposes of summary

judgment and that Appellee established an undue hardship as a matter of law as it

related to Appellant's case. However, the facts and the reasonable inferences drawn

therefrom revealed genuine disputes as to whether Appellant met his burden or

Appellee met its burden of establishing an undue hardship. There was ample record

evidence that Appellant's sincerely held religious belief warranted an

accommodation from the COVID-19 vaccination requirement and Appellee did not

establish sufficient evidence of an undue hardship in granting the request since it

spoke of COVID-19 generally. It did not present a specific analysis of undue

hardship in the emergency department and did not explain why it was able to grant

the accommodation to other physicians who requested a religious accommodation

from the COVID-19 vaccine when it denied Appellant's request. It also never

claimed an undue hardship in the process of denying Appellant's religious

accommodation request, informing Appellant only that they claimed he did not

10

state a sincerely-held religious belief. It was also error for the Trial Court to conclude Appellant failed to demonstrate sufficient comparator evidence.

Appellee decided it wanted to cherry-pick those it felt were worthy of religious accommodations. Its arbitrary decisions were not supported by its claims that Appellant failed to state a sincerely-held religious belief (which the Trial Court agreed that Appellant sufficiently laid out a sincerely-held religious belief). The Trial Court appeared to want to find a reason to grant summary judgment given the nature of COVID-19. In granting summary judgment, the Trial Court usurped the role of a jury and improperly dismissed Appellant's claims. This Court should vacate the order granting summary judgment and remand this case to the Trial Court for Trial.

## ARGUMENT[1]

## I. APPELLEE WAS NOT ENTITLED TO SUMMARY JUDGMENT ON APPELLANT'S FAILURE TO ACCOMMODATE CLAIMS BECAUSE GENUINE DISPUTES OF MATERIAL FACT EXISTED AS TO WHETHER APPELLEE MET ITS BURDEN OF PROVING AN UNDUE HARDSHIP AS A MATTER OF LAW.

The Trial Court correctly concluded that Appellant established sufficient evidence to establish a genuine dispute of material fact on summary judgment as it related to his sincerely held religious belief. In granting summary judgment, the Trial Court held that Appellee established an undue hardship on the conduct of its business and that Appellant did not present sufficient evidence to rebut the claims of undue hardship based on the limited comparator information presented by Appellant. Both these conclusions were error and required drawing inferences adverse to Appellant as the non-moving party. The Trial Court erred in granting summary judgment as a result.

To establish a failure to accommodate a religious belief claim, a plaintiff must establish that they held a sincere religious belief that conflicted with a job requirement, they notified their employer of that conflict, and that they were disciplined for failing to comply with the conflicting requirement. See Fallon v.

---

[1] Pennsylvania Courts generally interpret the PHRA in accord with its federal counterparts, to include Title VII. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). As such, the arguments relating to violations of both Title VII and the PHRA are discussed together herein.

Mercy Catholic Med. Ctr., 877 F.3d 487, 490 (3d Cir. 2017).

As an initial note, Appellee never communicated to Appellant that granting his religious accommodation request would have constituted an undue hardship upon Appellee. Instead, it asserted only that Appellant failed to assert a sincerely held religious belief when it denied his accommodation request. Appx745. It was, therefore, disingenuous of Appellee to argue undue hardship for the first time at the Trial Court.

At no point did Appellee consider hardship in denying Appellant's religious accommodation request. There is no evidence of record in this matter to suggest that, at all.  The basis for denial was repeatedly stated to be based on the sincerity of Appellant's religious beliefs. Appellee never stated it would be an undue hardship to grant Appellant's accommodation request. Therefore, it was disingenuous to claim for the first time in the Trial Court that granting Appellant's accommodation request would pose an undue hardship, especially after granting other religious accommodation requests to individuals based on the same reasoning.[2]

---

[2] A party should not be able to show it is entitled to the defense of undue hardship as a matter of law at summary judgment by after-the-fact zealous advocacy by its attorney. If the record demonstrates, undisputedly, that undue hardship was not a factor in the decision at all, as the record in this matter demonstrates, then the burden has not been met (regardless of a hired gun expert to try and show post-denial justification for their decisions). At a minimum, the lack of any evidence of consideration of undue hardship on an individualized basis as it relates to

13

Dr. Emma Simpson, president of the Medical Staff of Appellee and an individual who sat on the appeals review committee as it relates to Appellant's requested accommodation, testified in her deposition that there was no discussion of undue hardship in considering Appellant's religious accommodation request appeal. Appx 821 (N.T. Simpson 21:9-16). This is consistent with Dr. John Stalkamp, interim Vice President, who testified that in reviewing Appellant's application for a religious accommodation, he did not recall if hardship was ever part of the consideration in denying Appellant's request but only that the accommodation committee determined that Appellant did not articulate a sincerely held religious belief. Appx723-724 (N.T. Stalkamp Tr. 40:12-41:11).

However, even if Appellee were entitled to argue that granting the accommodation would have posed an undue hardship, the Trial Court erroneously concluded that Appellee established the undue hardship defense as a matter of law when it granted summary judgment. When a moving party would bear the burden of proof at trial, they bear the burden of proof at summary judgment to establish all of the essential elements of the defense to warrant judgment in its favor. In re Bressman, 327 F.3d 229, 237-38 (3d Cir. 2003). This requires showing that no reasonable jury could find for the non-moving party. Id. at 238. Only then does the

_____

Appellant, demonstrates a genuine dispute of material fact as to whether Appellee met its burden of establishing an undue hardship.

14

non-moving party have to demonstrate a genuine issue of material fact sufficient to allow a jury to find in its favor at trial. See Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). The party opposing the motion for summary judgment cannot rest on mere allegations, but must present actual evidence creating a genuine issue of material fact. See Anderson, 477 U.S. at 248.

The burden of demonstrating that granting a religious accommodation for a plaintiff's sincerely held religious belief is upon the employer, which must show that the burden is substantial in the overall context of the employer's business. See Groff v. DeJoy, 600 U.S. 447, 468 (2023). It is not enough to show more than a *de minimus* cost and, instead, the employer must demonstrate the accommodation would result in substantial increased costs in relation to the conduct of its business. Id. at 468, 470. The Supreme Court in Groff mandated that courts apply a test regarding undue hardship to take into account all relevant factors in the case at hand, to include the accommodations at issue and the practical impact in light of the nature and size of an employer. Id. at 470-71.

A jury should have been allowed to consider whether there would truly have been an *undue* hardship by granting Plaintiff's request when Defendant did grant many other accommodation requests. A rational jury could conclude that if other employees can be exempted from the COVID-19 vaccine requirement, then it would not be an undue hardship on Defendant, especially given the other methods

15

of preventing or reducing transmission risk.

Another court in the Eastern District of Pennsylvania, considering substantially similar facts regarding the undue hardship analysis, found a rational jury could find for either party on the issue of undue hardship. See Gray v. Main Line Hosps., Inc., 2024 U.S. Dist. LEXIS 26885 (E.D. Pa. Feb. 15, 2024) (Scott, J.) (Appx848-855). In Gray, the plaintiff, a nurse in the Emergency Department at her employer's Paoli Hospital, part of the Main Line Health System, requested religious exemption to her employer's COVID-19 Vaccination Policy, which indicated that employees who did not receive a COVID-19 vaccine or an approved exemption were subject to termination. Gray, 2024 U.S. Dist. LEXIS 26885 at *2 (Appx848-849).

The plaintiff objected to the COVID-19 on the basis that she was not comfortable having genetic components her body did not create because she believed it would alter her image which God intended for her. Id. at **2-3 (Appx849). Her religious exemption request included a statement from her pastor. Id. at *2 (Appx848-849). Her employer reviewed the religious accommodation request and concluded that she "failed to articulate a sincerely held religious belief that precluded COVID vaccination." Id. at *4 (Appx849). The exemption committed determined that COVID-19 vaccines did not alter one's genetic makeup and that the plaintiff's exemption request was focused on science rather than

16

explaining her religious objection to the vaccine.

After her request was denied, the plaintiff submitted an appeal, adding that COVID-19 vaccines were tested on fetal cell lines violating her religious opposition to abortion. Id. at *4 (Appx849). Again, through the appeals committee, the employer denied the request because the request focused on genetic components and did not correlate her religious beliefs with her objection to the vaccine. Id. (Appx849). The plaintiff was terminated and filed charges with the EEOC and PHRC before ultimately bringing suit in District Court. Just as in the instant matter, the employer never made a claim before litigation that the accommodation would have imposed an undue hardship and claimed the plaintiff did not establish a sincerely held religious belief. Id. at **8-9 (Appx850-851). Even if she had, the employer argued, such an accommodation would have imposed an undue hardship on the employer. Id. at *9 (Appx851).

The Gray Court disagreed. Just as in the instant matter, the trial court in Gray found, at a minimum, that there was a genuine dispute of material fact as to whether the plaintiff had a sincerely held religious belief which conflicted with receiving a COVID-19 vaccine. See id. at **11-14 (Appx851-852). The Gray Court then turned to an undue hardship analysis, noting that the burden then shifts to the employer to demonstrate that accommodating the sincerely held religious belief would cause an undue hardship. Id. at *14 (Appx852). Just as in the instant matter,

17

the employer argued that each vaccine exemption posed a significant risk to the
health and safety of employees and patients. Id. at *15 (Appx852-853).. The
employer relied on the expert opinion of Dr. Daniel Salmon, whose report described
the toll the COVID pandemic took on health care workers and the ability of health
care institutions to care for their communities. Id. at **15-16 (Appx852-853). Dr.
Salmon stated that mandatory COVID-19 vaccine policies were critical protective
actions for health care institutions to protect patients and staff and that a larger
number of religious exemptions would result in greater risk of COVID-19
transmission and outbreaks; adversely impacting other health care staff, patients,
and the capacity of the healthcare system to operate. Id. at **15-16 (Appx852-853).

        In Gray, the plaintiff countered that the employer presented no evidence to
suggest how granting her, specifically, the same accommodations given to other
employees who were granted a medical or religious exemption, available under the
COVID-19 policy (reasonable accommodations included testing and reassignment
and additional infection prevention control measures) would have created an undue
hardship on its business operations. Id. at **16-17 (Appx853). This fact-specific
analysis led to the Gray Court concluding that a reasonable jury could find for either
party on the issue of undue hardship: the employer presented some evidence of
hardship and the employee presented some evidence which countered the broad
statement of the employer given the availability of accommodations which were

                                           18

provided to others. Id. at \*17 (Appx853).

Just like Gray, Appellant presented sufficient evidence at the Trial Court below to allow a rational jury to conclude that Appellee did not establish an undue hardship for granting Appellant's individual accommodation request. Appellant presented several aspects of evidence within the record which would have allowed a rational jury to conclude that granting Appellant an exemption would not have posed an undue hardship. First, Appellant presented evidence that the same exemption request was granted to another physician, requesting the accommodation on the same religious grounds as Appellant, but the only difference being that the other physician's religious denomination was Catholic instead of Tenth Presbyterian. See Appx421-422 (N.T. Bushra 323:12-324:15); Appx814; Appx834-838.

In addition to the disparate treatment of Appellant from other physicians requesting exemptions, Appellant presented deposition testimony from Dr. Emma Simpson, who was the President of the Medical Staff at Appellee during the relevant time period and reviewed Appellant's religious exemption request at issue in this matter as a part of a committee considering final appeals of denials of religious exemption requests. See Appx819-821. Dr. Simpson testified that she voted against denying Appellant's religious exemption request. Appx821 (N.T. Simpson 20:19-24). She also testified that she did not recall any discussion in

regard to whether Appellant's request should be approved or denied other than just

whether Appellant articulated a sincerely held religious belief. Appx821-822 (N.T.

Simpson 21:9-22:1). The mere fact that the decision to deny Appellant's requested

religious exemption, indicating that a member of the appeals committee believed it

would be appropriate to grant the request, demonstrates that a rational jury could

conclude there was not an undue hardship on Appellee to grant the request.

　　　　Finally, just like in <u>Gray</u>, Appellee's COVID-19 Vaccination Policy

applicable to Appellant included the same possible accommodations: Weekly

testing; reassignment; additional infection prevention and control measures.

Appx665; <u>see</u> <u>Gray</u>, 2024 U.S. Dist. LEXIS 26885 at *16 (Appx853). And just like

in <u>Gray</u>, Appellee presented no evidence as to how granting Appellant's

accommodation specifically would have posed an undue hardship. At a minimum,

Appellee did not establish that it was entitled to summary judgment as a matter of

law based on the affirmative defense of undue hardship.

　　　　There was a dispute of material fact as it relates to undue hardship making

the grant of summary judgment improper. Given that Appellee had the burden of

establishing undue hardship as a matter of law at the summary judgment stage, and

given the discussion above, it was error to grant summary judgment on Appellant's

failure to accommodate claims in violation of Title VII and the PHRA. This Court

should vacate the order granting summary judgment and remand this matter to the

Trial Court for trial.

## II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST APPELLANT ON HIS DISPARATE TREATMENT CLAIMS SINCE APPELLANT PRESENTED ADMISSIBLE EVIDENCE OF OTHERS OUTSIDE HIS PROTECTED CLASS BEING TREATED MORE FAVORABLY.

When considering disparate treatment religious discrimination claims, the *prima facie* case burden matches that of a race or sex discrimination claim: membership in a protected class; qualification for the position; suffering an adverse employment action; and the action occurred under circumstances giving rise to an inference of discrimination. See Dinnerstein v. Burlington Cty. College, 764 Fed. App'x 214, 217 (3d Cir. 2019).

In the matter below, the Trial Court immediately discounted Appellant's evidence of others outside his protected class being treated more favorably, demonstrating a genuine dispute of material fact on the disparate treatment claim.

Appellant established membership in a protected class: Tenth Presbyterian. Appx679. Appellant's request for an exemption was denied, resulting in his administrative suspension and prohibition from practicing medicine at Appellee. Appx009. The suspension resulted in him no longer being the president of the medical staff at Lankenau Medical Center. Appx231. These both constitute adverse employment actions. As to the third element, Appellant presented evidence that Appellant's religious accommodation request was treated differently than that of a

21

Catholic physician.

Both of the religious accommodation requests were presented in the record.

Compare Appx675-682, with Appx834-838. Both Appellant's and the Catholic

Physician's requests for religious accommodation in the form of exemption from

the COVID-19 vaccine requirement identified an objection regarding a vaccine that

utilized fetal cells in its development. Compare Appx681,[3] with Appx835.[4]

Appellant's request included a letter from his religious leader, whereas the Catholic

Physician's request included a note that her religious leader specifically declined

providing any letters of support for religious exemption requests from the COVID-

19 vaccine. Compare Appx679 ("[Appellant's] sincere convictions in respect of

vaccines cannot be separated from his convictions as a follower of God, which is

---

[3] "First, my Christina worldview teaches that human life begins at the moment of conception, and that abortion, which ends a human life, is therefore murder. Utilizing cells obtained from aborted fetuses for medical research is therefore morally reprehensible. The pharmaceutical companies that have manufactured the currently available COVID-19 vaccines have all utilized fetal cell lines in some fashion during development and/or production. It is my sincerely-held belief that my receiving a vaccine developed using fetal cells would signify my approval of the unethical means used to develop it, which I cannot do while remaining true to my faith." Appx681

[4] "It is my personal, deeply held religious belief, in the sanctity of human life, at all stages, that causes me to reject the Covid vaccine. It is my personal belief, that it is morally unacceptable for me, personally, to receive a vaccine that at any stage of its development or production utilized the fetal cells of aborted babies. As a practicing Roman Catholic, under the tenets of my faith I am obligated to follow my conscience on matters of sanctity of life. I come to you with an informed and sure conscience that I should not receive the Covid vaccine." Appx835.

[Appellant's] core identity"), with Appx837 ("My parish priest Monsignor Grous, has been directed . . . not to sign any vaccine exemption forms. On close examination, this is appropriate, since no priest should be asked to certify the personal conscience choice of one of their parishioners."). This Catholic Physician is not a member of the Tenth Presbyterian Church, yet was granted a religious accommodation and was permitted to continue caring for patients in Appellee's facilities. Appx421-423 (N.T. Bushra 323:12-325:15); Appx834-838.

This evidence very clearly demonstrates that Appellee treated a Catholic physician, articulating almost an identical reasoning, without support of a religious leader, differently and more favorably than Appellant, a member of the Tenth Presbyterian Church. These are different denominations of Christianity and this disparate treatment gives rise to an inference of discrimination. Appellee presented no argument below regarding a legitimate non-discriminatory reason for its different treatment, relying instead on its argument that Appellant's articulated belief was not a sincerely held religious belief and on the undue hardship Appellant's requested exemption allegedly would cause. As discussed above, Appellee failed to meet its burden in the Court below to establish an undue hardship, in part because of the granting of the Catholic physician's religious accommodation. For the same reasons as above, this evidence is sufficient to establish Appellant's *prima facie* claim of religious discrimination in the form of

disparate treatment. As Appellee failed to meet its burden below under the

McDonnell-Douglas burden-shifting analysis and Appellant demonstrated, *supra*,

the disputes of material fact related to alleged undue hardship, it was error by the

Trial Court to grant summary judgment. As such, this Court should vacate the

order granting summary judgment on Appellant's religious discrimination claims

and remand this matter to the Trial Court for trial.

### III.    THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S RETALIATION CLAIMS BECAUSE APPELLANT PRESENTED A *PRIMA FACIE* CASE OF RETALIATION UNDER TITLE VII AND THE PHRA.

Appellant sufficiently established a claim of retaliation at the Trial Court and

it was error of the Trial Court to grant Appellee's summary judgment motion on

such claims. To establish retaliation, the plaintiff must prove (1) he engaged in a

protected activity; (2) the employer took an adverse employment action after the

protected activity; and (3) a causal link existed between the activity and adverse

employment action.  See, e.g., Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279

(3d Cir. 2000) (setting forth elements of a *prima facie* retaliation claim). Here,

Appellant engaged in protected activity by requesting a religious accommodation

from the COVID-19 vaccine requirement. But he went beyond that when he

appealed the denial and asked for intervention from other entities within Appellee's

leadership and decision-makers, thus opposing the unlawful denial of his

accommodation request. Mr. Robinson's visible disdain to Appellant's stated

24

reasoning for requesting accommodation demonstrates retaliatory motive and a

pattern of antagonism by decision makers. Appx342 (N.T. Bushra 244:10-25).

Appellee's stated reasoning for denying Appellant's requested accommodation,

claiming he did not state a sincerely held religious belief, despite granting other

exemption requests and appeals based on the same reasoning indicates a retaliatory

intent against Appellant, campus chief and chair of the Lankenau emergency

department, for requesting an accommodation. See Appx745.

This is further exemplified by Appellee's actions to quickly move to name a

replacement. Appx683. Although Appellee articulates the necessity and importance

of having a backup in case his request was denied, a rational factfinder could

conclude that Appellee retaliated against Appellant given his visible position at

Appellee, for Appellant's request for a religious accommodation. Appx683. This is

further highlighted by the granting of other religious accommodation requests

based on the same reasoning. Appx814. Taking all facts in the light most favorable

to Appellant as the non-movant, it was improper to grant summary judgment and

this Court should vacate the order granting summary judgment and remand this

matter to the Trial Court for trial.

## CONCLUSION

It was error to grant summary judgment and deprive a jury from its role as factfinder to make the conclusions ultimately made by the Trial Court below. Appellant respectfully requests this Honorable Court vacate the order of the Trial Court granting summary judgment and remand this matter to the Trial Court for trial.

Respectfully submitted,

**KOLLER LAW, LLC**

Dated: March 18, 2024        By: /s/ David M. Koller
                             David M. Koller, Esquire (90119)
                             Attorney for Appellant Joseph Bushra

## COMBINED CERTIFICATIONS

### Certificate of Bar Membership

I, DAVID M. KOLLER, hereby certify that I am admitted to the Bar of the

United States Court of Appeals for the Third Circuit.

**KOLLER LAW, LLC**

Dated: March 18, 2024           By:        /s/ David M. Koller
                                           David M. Koller, Esquire (90119)
                                           Attorney for Appellant

### Identical Compliance Certification

I, DAVID M. KOLLER, hereby certify on this day, <u>March 18, 2024</u>, that the

text of the electronic brief and hard copies are identical.

**KOLLER LAW, LLC**

Dated: March 18, 2024           By:        /s/ David M. Koller
                                           David M. Koller, Esquire (90119)
                                           Attorney for Appellant

### Virus Check Certification

I, DAVID M. KOLLER, hereby certify on this day, <u>March 18, 2024</u>, that a

virus check was performed on the electronic brief version of this brief utilizing the

virus check that KOLLER LAW LLC's computer system utilizes.

**KOLLER LAW, LLC**

Dated: March 18, 2024           By:        /s/ David M. Koller
                                           David M. Koller, Esquire (90119)
                                           Attorney for Appellant

## Certification of Compliance with Page Limitation, Typeface Requirements, and Type Style Requirements

The foregoing Brief complies with the limitations established in Fed. R.

App. P. 32(a)(7)(A) because this brief is less than thirty (30) pages in length,

excluding the parts of the brief exempted by Fed. R. App. P. 32(f). In preparing this

certification, I relied on the page count function of Microsoft Word, the word-

processing system used to prepare the foregoing Brief.

The foregoing Brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it

was prepared in a proportionally spaced typeface using Microsoft Word: 14-point

Times New Roman font.

**KOLLER LAW, LLC**

Dated: March 18, 2024        By:        /s/ David M. Koller
                                        David M. Koller, Esquire (90119)
                                        Attorney for Appellant

## CERTIFICATE OF SERVICE

I, David M. Koller, hereby certify that on March 18, 2024, a true and correct copy

of Appellant's Brief and Appendix (Volume One) was filed electronically and was served

electronically upon the following Filing Users by the Court's Notice of Docket Activity:

Caren Litvin, Esq.
Litvin Law Office
150 N. Radnor Chester Road, Suite F-200
Radnor, PA 19087
cl@litvinlawoffice.com
*Counsel for Appellee*

**KOLLER LAW, LLC**

Dated: March 18, 2024          By:     /s/ David M. Koller
                                       David M. Koller, Esquire (90119)
                                       Attorney for Appellant

29

# APPENDIX TABLE OF CONTENTS

**VOLUME ONE (Appended to Brief)**

Notice of Appeal..............................................................................Appx001

District Court Order ........................................................................Appx003

District Court Memorandum Opinion.............................................Appx004

**VOLUME TWO**

District Court Docket Entries..........................................................Appx025

Complaint.........................................................................................Appx028

Answer to Complaint .......................................................................Appx044

Statement of Material Facts in support of Motion for Summary Judgment.Appx064

     Deposition of Appellant.........................................................Appx099

     Appellant's EEOC Charge......................................................Appx513

     Appellant's MLEMA Employment Agreement ....................Appx529

     MLEMA Employee Handbook with Appellant's Signature Page .....Appx539

     Appellant's 2021 K-1 issued by MLEMA ...........................Appx591

     Appellant's Independent Contractor Agreement with Appellee........Appx592

     Dr. Salmon Expert Report .....................................................Appx615

     Appellee's Covid-19 Vaccination Policy ..............................Appx664

     Email Chain between Appellant and Dr. Simpson Sept. 2021...........Appx667

     Appellant's Religious Exemption Request............................Appx675

     Appellant's Email Exchange with Dr. Gamburg 9/22/21 ....Appx683

Deposition of Dr. Stalkamp ................................................................Appx684

Denial of Appellant's Religious Exemption Request........................Appx745

Section 4.E.1 of the Medical Staff Bylaws.........................................Appx747

Appellant's email with Mendocino 11/1/21 .......................................Appx748

Appellant's Leave of Absence Request 11/3/21 ................................Appx750

Notice of Appellant's Administrative Suspension 11/15/21.............Appx751

EEOC Dismissal and Notice of Rights 12/19/22 ...............................Appx752

Appellant's Response to Appellee's Statement of Material Facts in support of
Appellant's Opposition to Summary Judgment .................................Appx756

Deposition of Dr. Simpson .................................................................Appx815

Religious Accommodation Request of Catholic Physician................Appx833

Appellee's Expert Witness Disclosures..........................................Appx839

Gray v. Main Line Hosps., Inc., No. 23-0263, 2023 U.S. Dist. LEXIS 26885 (E.D.
Pa. Feb. 15, 2024) (Scott, J.) ..............................................................Appx848

**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH BUSHRA,** | : | **Civil Action No. 23-cv-01090** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MAIN LINE HEALTH, INC.,** | : | |
| **Defendant.** | : | |

### <u>NOTICE OF APPEAL</u>

Notice is hereby given that Joseph Bushra, Plaintiff in the above-named case, hereby

appeals to the United States Court of Appeals for the Third Circuit from the order entering

judgment in favor of Defendant and against Plaintiff Joseph Bushra on his claims of violations of

Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act entered on

December 28, 2023 (ECF Doc. No. 30).

                                        Respectfully Submitted,
                                        **KOLLER LAW, LLC**


                                         */s/ David M. Koller*
                                        David M. Koller, Esquire

Dated January 18, 2024

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH BUSHRA,** | : | **Civil Action No. 23-cv-01090** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MAIN LINE HEALTH, INC.,** | : | |
| **Defendant.** | : | |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 18th day of January, 2024, a true and correct copy of

Plaintiff's Notice of Appeal was served via the Court's electronic filing system upon the following:

CAREN LITVIN
150 N. Radnor Chester Road
Suite F-200
Radnor, PA 19087
CL@litvinlawoffice.com

Brendan Hennessy
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
bhennessy@hennessylawfirm.com
*Counsel for Defendant*


KOLLER LAW, LLC


By:     ***/s/ David M. Koller***
DAVID M. KOLLER, ESQ.
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH BUSHRA                  :        CIVIL ACTION
                               :
          v.                   :
                               :
MAIN LINE HEALTH, INC.         :        NO. 23-1090

<u>ORDER</u>

AND NOW, this 28th day of December, 2023, for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that the Motion of Defendant Main Line Health, Inc. for Summary Judgment (Doc. #17) is GRANTED.


                               BY THE COURT:


                               /s/ Harvey Bartle III
                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH BUSHRA          :          CIVIL ACTION
                       :
        v.             :
                       :
MAIN LINE HEALTH, INC. :          NO. 23-1090

MEMORANDUM

Bartle, J.                              December 28, 2023

        Plaintiff Joseph Bushra, a physician, has sued
defendant Main Line Health, Inc. ("MLH") for alleged violations
of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. §§ 2000e et seq., and the Pennsylvania Human Relations
Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 et seq.  He claims that
he was subjected to unlawful discrimination and retaliation
because of his Christian faith as a Presbyterian for refusing to
be vaccinated against COVID-19.  Defendant has now moved for
summary judgment pursuant to Rule 56 of the Federal Rules of
Civil Procedure.

                            I

        Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a);  see also Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  A dispute is genuine if the evidence is such that a

reasonable factfinder could return a verdict for the nonmoving
party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254
(1986).  The court views the facts and draws all inferences in
favor of the nonmoving party.  See In re Flat Glass Antitrust
Litig., 385 F.3d 350, 357 (3d Cir. 2004).

    Summary judgment is granted when there is insufficient
record evidence for a reasonable factfinder to find for the
nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence
of a scintilla of evidence in support of the [nonmoving party]'s
position will be insufficient; there must be evidence on which
the jury could reasonably find for [that party]."  Id.  In
addition, Rule 56(e)(2) provides that "[i]f a party fails to
properly support an assertion of fact or fails to properly
address another party's assertion of fact as required by
Rule 56(c), the court may . . . consider the fact undisputed for
the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

    The following facts are undisputed.  Dr. Bushra is a
member of the Tenth Presbyterian Church in Philadelphia.  He
worked as an attending physician in the emergency room at
Lankenau Medical Center ("Lankenau") and served as Campus Chief
of Lankenau's Emergency Department.

    Lankenau is one of four acute care hospitals in the
MLH system.  Staffing for the emergency departments at the MLH

-2-

hospitals is provided through an exclusive services contract with a private practice group called Main Line Emergency Medicine Associates, LLC ("MLEMA"). MLEMA employed Dr. Bushra in 2003. He became an owner of MLEMA in 2006. Separate from his services through MLEMA as an emergency room doctor and campus chief, Dr. Bushra had an independent contractor agreement with MLH to serve as the Medical Director for Emergency Medical Services.

Outside of the separate independent contractor agreement, MLH did not compensate him. MLEMA charges MLH for the services performed by its physicians and remits a portion of those fees to each physician pursuant to their Operating Agreement. Physicians are permitted to work part-time elsewhere only if they render adequate services to MLH. Thus, Dr. Bushra received a portion of MLEMA's profits as compensation for rendering physician services. MLEMA also provided him health, retirement, malpractice insurance, and other benefits.

However, MLH requires MLEMA physicians to follow certain policies and procedures. To treat patients, Dr. Bushra was required to hold MLH medical staff membership and seek renewal every two years. As a member, he had to comply with the medical staff bylaws, rules, regulations, policies, and procedures of MLH.

-3-

On July 15, 2021, MLH adopted a policy mandating that all members of the medical staff receive vaccination against COVID-19 by October 1, 2021. Dr. Bushra had contracted and recovered from COVID-19 in June 2021. On September 1, 2021, he emailed his COVID-positive test results from June to Dr. Emma Simpson, the President of the Medical Staff, as proof that he had natural immunity and did not require vaccination. He reiterated to Dr. Simpson on September 12, 2021 that he was "not requesting a medical or religious exemption at this time."

Three days later, on September 15, 2021, Dr. Bushra changed course and submitted an application for a COVID-19 vaccine exemption on religious grounds. He marked in the application that he had not received a religious exemption from MLH for the annual flu vaccination and that his Christian beliefs prevented him from receiving "[s]ome but not all vaccines."

Dr. Bushra raised four specific objections. First, he stated in his application:

> [M]y Christian worldview teaches that human life begins at the moment of conception, and that abortion, which ends a human life, is therefore murder. Utilizing cells obtained from aborted fetuses for medical research is therefore morally reprehensible. The pharmaceutical companies that have manufactured the currently available COVID-19 vaccines have all utilized fetal cell lines in some fashion during development and/or production. It is my sincerely-held

-4-

Appx007

> belief that my receiving a vaccine developed
> using fetal cells would signify my approval
> of the unethical means used to develop it,
> which I cannot do while remaining true to my
> faith.

It is undisputed that the three COVID-19 vaccines available in September 2021 from Moderna, Pfizer and BioNtech, and Janssen Biotech all used cell lines derived from fetal tissue in their development or manufacture.[1]

Second, Dr. Bushra stated on his exemption application that his sincerely held religious beliefs prohibited him from taking action that puts him at unnecessary risk of harm. He wrote that he was "at extremely low risk of reinfection or death from COVID-19" and that "the clinical benefit of receiving vaccination after infection is not known to outweigh [COVID-19 vaccination] risks."

Third, he added that his sincerely held religious beliefs prohibited him from "receiv[ing] a scarce vaccine or booster before someone else who may receive a greater benefit," specifically, individuals "who are at higher risk of death from COVID-19 than [him]."

Fourth, he wrote that:

> Finally, and most importantly, my Christian
> worldview requires me to act in accordance
> with my conscience; to violate my conscience

---

1. In a deposition, Dr. Bushra testified that he did not know whether the fetal cell lines used in the COVID-19 vaccine were originally obtained through the killing of a fetus.

-5-

Appx008

is a sin. This teaching is explicit in the
Christian scriptures, and is recognized by
the First Amendment to the Constitution. For
the above and many other reasons, receiving
the COVID vaccination at this time would
violate my conscience, and would therefore
be a sinful act on my part.

In support of his application for a religious
exemption, he included a letter from his minister, The Rev. Dr.
Liam Goligher, who conveyed that "Dr. Bushra would be sinning by
violating his conscience before the Lord.  For him this is not a
physical matter only but a spiritual matter."  The minister
concluded that Dr. Bushra's "sincere convictions in respect of
vaccines cannot be separated from his convictions as a follower
of God, which is his core identity."

MLH's Religious Exemption Committee denied Dr.
Bushra's request, and he appealed to the MLH Appeals Committee.
On October 19, 2021, the Appeals Committee held that he had not
articulated a sincerely held religious belief and denied the
request.  MLH advised him that he would be placed on
administrative suspension if he did not receive the first dose
of the COVID-19 vaccine within fourteen days.  He did not do so.
On November 15, 2021, Dr. Bushra was placed on administrative
suspension from the medical staff at MLH.  Although he remained
an owner of MLEMA, he was no longer Campus Chief and could not
care for his patients at MLH.

-6-

The Novavax vaccine, which did not involve fetal cell lines, became available in July 2022. Two of Dr. Bushra's MLEMA colleagues discussed it with him earlier, in April 2022. However, he was not vaccinated because Novavax had received only emergency approval from the Food and Drug Administration. Dr. Bushra is not opposed to Novavax "[f]rom a religious standpoint, strictly on the fetal cell line issue." Rather, his religious objection is that "my faith tells me and the Bible teaches me to be wise . . . and that to take on unnecessary risk is foolish and that foolishness is sin."

Dr. Bushra filed a charge of religious discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on April 15, 2022. On December 19, 2022, the EEOC issued a notice of right to sue. Dr. Bushra filed the instant action on March 20, 2023, which as noted included claims under both Title VII and the PHRA. This lawsuit was filed within the ninety-day period allowed under Title VII but before the one-year period had expired before a lawsuit may be filed under the PHRA. Dr. Bushra at this point has not moved to amend his complaint regarding his PHRA claims.

III

Title VII prohibits discrimination and retaliation by an employer against an employee because of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . [a] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

The PHRA similarly prohibits employment discrimination because of "religious creed." 43 Pa. Cons. Stat. § 953. Because Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts," this court may generally consider Dr. Bushra's PHRA claim as coextensive with his Title VII claim. Kelly v. Drexel U., 94 F.3d 102, 105 (3d Cir. 1996). However, the two statutes differ in at least one respect. Title VII protects only individuals who are in an employment relationship with an employer, including a joint employer. Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213-115 (3d Cir. 2015). In contrast, the PHRA not only covers employees but also "certain limited categories of independent contractors," which include licensed professionals and other workers regulated by the Pennsylvania Bureau of Professional and Occupational Affairs

-8-

or by the Fair Housing Act.  See id.;  43 Pa. Cons. Stat.
§ 954(x).

Defendant MLH argues that summary judgment is
appropriate on several grounds.  First, Dr. Bushra cannot
maintain a Title VII action because MLH was not his employer.
While Dr. Bushra has conceded he is not an employee of MLH, he
counters that he has pleaded a joint employment relationship
with MLH and MLEMA.  In Nationwide Mut. Ins. Co. v. Darden, the
Supreme Court explained that "[i]n determining whether a hired
party is an employee . . . we consider the hiring party's right
to control the manner and means by which the product is
accomplished."  503 U.S. 318, 323 (1992).  Here, MLH maintains
significant control over Dr. Bushra in that it requires him to
comply with its by-laws, rules, regulations, policies, and
procedures.  See id.;  Faush, 808 F.3d at 214-15.  This is not
the usual basis of an independent contractor relationship.

Dr. Bushra as a physician is a licensed professional.
It is undisputed that he is an employee and owner of MLEMA,
which has an exclusive services contract with MLH.  Furthermore,
as noted above, it is undisputed that as an attending physician
at MLH, he must follow its policies and procedures.
Accordingly, even if he is not an employee of MLH, there is
sufficient evidence for a jury to find that he had an

-9-

independent contractor relationship with MLH, and thus, that he is protected under the PHRA.

Second, MLH raised the affirmative defense in its Answer that Dr. Bushra had not exhausted his administrative remedies under the PHRA. It maintains that he cannot pursue a PHRA action because he filed suit before the PHRC issued notice of dismissal or before the one-year statutory period had expired. See 43 Pa. Cons. Stat. § 962(c)(1).

Exhaustion of administrative procedures is a prerequisite to filing suit under both Title VII and the PHRA. An action under Title VII is premature if it is filed before the EEOC has investigated the claim and issued a notice of right to sue. 42 U.S.C. § 2000e-5(e)(1). Similarly, an action under the PHRA is premature if it is filed before the PHRC has dismissed the administrative complaint or investigated the matter for one year. 43 Pa. Cons. Stat. § 962(c)(1).

An individual may simultaneously file an administrative complaint with both the EEOC and the PHRC and designate which agency has initial jurisdiction over the matter. Simon v. IPS-Integrated Project Services, LLC, No. CV 17-03474, 2018 WL 3585137 at *3 (E.D. Pa. July 26, 2018). However, dual-filing may present an administrative exhaustion issue when a federal complaint is docketed. Where, as here, the EEOC first investigates the matter and issues the notice of right to sue,

-10-

the complainant must file suit within ninety days or lose out on his Title VII claims. <u>Id.</u> at *3-*4. But if the PHRC has not also dismissed the suit within ninety days, then the PHRC claims are premature until one year has passed. <u>Id.</u> Courts sitting in the Eastern District of Pennsylvania have often resolved this issue by allowing plaintiffs to cure premature filing under the PHRA by submitting an Amended Complaint after the one-year limitation has expired. <u>Id.</u> at *4. This approach comports with Federal Rule of Civil Procedure 15(a)(2), which gives courts substantial leeway to grant leave to file an amended pleading. <u>See</u> Fed. R. Civ. P. 15(a)(2).

The one-year period has now run. Thus, the defense while at one point valid is no longer so. It would be highly formalistic and a waste of judicial resources to dismiss Dr. Bushra's PHRA claims at this time and await a motion to file an amended complaint. Since he has already pleaded PHRA claims, any amendment, of course, would be granted under Rule 15(a)(2) of the Federal Rules of Civil Procedure as in the interest of justice. <u>See</u> Fed. R. Civ. P. 15(a)(2). The Court is also cognizant of the oft-neglected Rule 1, which states that the civil rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Under the circumstances, the court will deem the

-11-

complaint as now properly pleading PHRA claims.  Even if Dr.
Bushra has no claim under Title VII because he is not an
employee of MLH, there is sufficient evidence, as noted above,
for a jury to find that he is a person covered under the PHRA.
See 28 U.S.C. § 1367.

IV

MLH further contends that no reasonable juror could
find that Dr. Bushra can maintain any claim of religious
discrimination.

To succeed in a retaliation claim, a Title VII
plaintiff must prove that: (1) he engaged in a protected
activity, (2) he suffered an adverse employment action, and
(3) there was a causal connection between the protected activity
and the adverse employment action.  See Moore v. City of
Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).  Here, Dr.
Bushra alleges that he was retaliated against for applying for a
religious exemption, which he contends is a protected activity.
However, as the Court of Appeals for the Eighth Circuit
explained in EEOC v. North Memorial Health Care, "merely
requesting a religious accommodation is not the same as opposing
the allegedly unlawful denial of a religious accommodation."
908 F.3d 1098, 1102 (8th Cir. 2018).  Although the latter is
protected activity under Title VII, the former is not.  See id.;
Divine Equal. Righteous v. Overbrook Sch. for the Blind, No. CV

-12-

23-846, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023). Dr. Bushra cannot prevail on his retaliation claim merely because he applied for a religious accommodation. Because he offers no other ground for retaliation, no rational juror could find for Dr. Bushra on this claim. See Anderson, 477 U.S. at 252.

To succeed in his failure to accommodate claim, Dr. Bushra must establish that: (1) he held a sincere religious belief that conflicted with MLH's COVID-19 vaccination requirement; (2) he informed MLH of this conflict; and (3) he was disciplined for failing to comply with the conflicting vaccination requirement. See Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania, 877 F.3d 487, 490 (3d Cir. 2017). It is undisputed that Dr. Bushra informed MLH of his religious objection to the COVID-19 vaccine and that MLH placed him on administrative suspension when his request for accommodation was denied and he remained unvaccinated.

Dr. Bushra claims that tenets of his Christian faith as a Presbyterian prevented him from receiving vaccination against COVID-19. The Title VII inquiry, however, does not end when a plaintiff simply labels a stated belief as faith-based. Dr. Bushra must come forward with evidence at this stage that his belief is religious in nature and sincerely held. Fallon, 877 F.3d at 490-91 (3d Cir. 2017).

-13-

The Supreme Court and Court of Appeals for the Third
Circuit have well-established guidelines for this inquiry.
Courts, of course, may not consider the validity or plausibility
of a person's belief. United States v. Seeger, 380 U.S. 163,
184-85 (1965). Rather, this court must focus on whether there
is a genuine dispute of material fact that Dr. Bushra's beliefs
are religious in nature or "essentially political, sociological,
or philosophical." See Africa v. Commonwealth, 662 F.2d 1025,
1031 (3d Cir. 1981); Fallon, 877 F.3d at 490. As defined by
our Court of Appeals in the context of an alleged civil rights
violation, religion addresses fundamental and important
questions, consists of a comprehensive belief system and not an
isolated moral teaching, and is recognizable by the presence of
formal and external signs. Africa, 662 F.2d at 1032.

Nonetheless, religion cannot be a "limitless excuse
for avoiding all unwanted obligations." See Finkbeiner v.
Geisinger Clinic, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022),
appeal dismissed, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept.
18, 2023). The Supreme Court and our Court of Appeals have made
clear that "'the very concept of ordered liberty precludes
allowing' [plaintiff], or any other person, a blanket privilege
'to make his own standards on matters of conduct in which
society as a whole has important interests.'" See Africa, 662

-14-

F.2d at 1031 (quoting <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215-16 (1972)).

In <u>Fallon</u>, a healthcare worker, Paul Fallon, refused inoculation against the flu. 877 F.3d at 489. He claimed a religious exemption, but he did not belong to any organized religious group. <u>Id.</u> He explained that being vaccinated would violate his conscience as to what is right and what is wrong. <u>Id.</u> at 492. The flu vaccine, in his view, would do more harm than good. <u>Id.</u> He simply stated that he agreed with a quote attributed to the founder of Buddhism. <u>Id.</u> That quote in essence urged a person to accept and do anything that "agrees with reason and is conducive to the good and benefit of one and all." <u>Id.</u>

Our Court of Appeals held that Mr. Fallon's "concern that the flu vaccine may do more harm than good" was a medical belief which plaintiff later justified through "one general moral commandment" not to harm one's body. <u>Id.</u> This "isolated moral teaching" was not comprehensive, and thus, not religious in nature. <u>See id.</u>; <u>Africa</u>, 662 F.2d at 1032.

Here, Dr. Bushra sought a religious exemption based on Christian beliefs respecting the sanctity of life, avoiding unnecessary risk of harm to oneself, giving scarce COVID-19 vaccines to those in greater need, and refraining from violating one's moral conscience. Citing <u>Fallon</u>, MLH counters that Dr.

-15-

Bushra's opposition to COVID-19 is solely based on his medical or scientific belief in the possible dangers of the vaccine to him. See 877 F.3d at 492. It further contends that his fourth allegedly religious objection concerning an offense to his conscience would confer a blanket privilege prohibited by our Court of Appeals. See Africa, 662 F.2d at 1031.

Dr. Bushra's claim is materially different from Paul Fallon's. Dr. Bushra is a member of the Tenth Presbyterian Church in Philadelphia and specifically ties his objection to the vaccine to his religious faith. It is undisputed that Presbyterians are a long-established branch of Protestant Christianity having its origins in the sixteenth century Reformation. The Presbyterian denomination meets all three Africa factors. 662 F.2d at 1032. Dr. Bushra's religion addresses fundamental and important questions, has a comprehensive belief system, and is recognizable by formal and external signs. See id. While Mr. Fallon failed to link his objections to the flu vaccine to any specific religious tenet, Dr. Bushra's application for a religious exemption specifically professes that receiving vaccination involving fetal cell lines would be contrary to the Scriptures and would not only violate his conscience but would constitute a sin, in effect a transgression of God's will. See Fallon, 877 F.3d at 492-93.

-16-

Dr. Bushra has presented sufficient evidence to establish a genuine dispute of material fact on summary judgment.  See Anderson, 477 U.S. at 254.  It is for the jury to determine whether he has a sincerely held religious belief.

V

Even if Dr. Bushra has a sincerely held religious belief, there is no violation of Title VII or the PHRA if MLH can establish that any religious accommodation would have imposed "undue hardship on the conduct of [its] business."  See 42 U.S.C. § 2000e(j).  MLH maintains that granting a religious exemption to Dr. Bushra, an emergency room doctor during a global pandemic, would have posed an undue hardship by threatening the health and safety of its patients and staff.

The Supreme Court recently clarified the "undue hardship" standard in a case involving a postal worker eschewing work on Sundays because of his Evangelical Christian belief in observing the Sabbath.  Groff v. DeJoy, 600 U.S. 447 (2023). The Court held that an employer simply showing "more than a de minimis cost . . . does not suffice to establish 'undue hardship' under Title VII."  Id. at 468.  The employer must demonstrate that the accommodation "would result in substantial increased costs in relation to the conduct of its particular business."  Id. at 470.  This inquiry "takes into account all relevant factors in the case at hand, including the particular

-17-

accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." Id. at 470.  Thus, "the context of an employer's business" matters in determining whether a hardship would be substantial.  Id. at 471.

Our Court of Appeals has recognized that both "economic and non-economic costs can impose an undue hardship on employers." E.E.O.C. v. Geo Group, Inc., 616 F.3d 265, 273 (3d Cir. 2010).  This principle comports with the Supreme Court's emphasis on a context-specific inquiry of "undue hardship."

Here, MLH contends that each vaccine exemption poses a significant risk to the health and safety of employees and patients.  It relies on the expert opinion of Dr. Daniel Salmon, the Director of the Institute for Vaccine Safety and a Professor of Global Disease Epidemiology and Control at Johns Hopkins University.

According to Dr. Salmon, healthcare workers were more likely to contract COVID-19 than others because they faced significant exposure to the virus through infected patients and other healthcare staff.  Indeed, members of MLH staff died from contracting COVID-19 in the first year of the pandemic.  A study published in a peer-reviewed medical journal found that in 2020, healthcare workers with direct patient contact had four times the risk of contracting COVID-19 compared with healthcare

-18-

workers without direct patient contact. Because healthcare workers faced such significant infection risk, they were also more likely to transmit the disease. More importantly, healthcare workers were at increased risk of infecting their patients, which included persons at increased risk of serious complications and death from the disease. For these reasons, the Centers for Disease Control and Prevention ("CDC") prioritized healthcare workers for COVID-19 inoculation when the vaccines became available.

Dr. Salmon explains that vaccines were proven to be highly effective in preventing the disease at the time that MLH instituted the mandate. According to him, "full vaccination with COVID-19 vaccines was 80% effective in preventing COVID-19." Although several studies found that some natural immunity derived from contracting COVID-19 existed for at least a short period of time, there was insufficient empirical data to determine its effectiveness, the length of protection, and whether protection extended to new variants that might emerge. The CDC recommended, in no uncertain terms, that all eligible persons should be vaccinated, including those with previous COVID-19 infection.

The court takes judicial notice that COVID-19 caused a deadly global pandemic at a scale unseen in a century. As of this writing, the disease has killed over one million people in

-19-

the United States since February 2020.  Centers for Disease
Control and Prevention, <u>COVID-19 Data Tracker</u> (Dec. 20, 2023),
https://covid.cdc.gov/covid-data-tracker.  The cumulative death
toll in July 2021, when MLH announced its vaccination policy,
was over 600,000.  <u>Id.</u>

It cannot be disputed that without the vaccine, Dr.
Bushra was at great risk of contracting and transmitting the
disease because he had frequent and direct contact with patients
and staff as a doctor in the emergency room.  Unvaccinated, Dr.
Bushra risked infecting and even causing the death not only of
his colleagues and MLH staff but also of vulnerable patients.
The ability of MLH to continue its mission of caring for,
treating, and healing the sick and injured would have been
severely impaired with an unvaccinated Dr. Bushra in its midst.
In sum, there can be no doubt that MLH would have incurred undue
hardship in the form of substantial social, if not economic,
costs if it had been required to accommodate Dr. Bushra's
religious beliefs.

Dr. Bushra does not dispute the factual assertions of
MLH drawn from or otherwise challenge Dr. Salmon's expert
report.  Nor does he present a rebuttal expert.  He simply
counters that MLH is "disingenuous" to argue undue hardship
because it granted the religious accommodation request of a
Roman Catholic member of MLH staff.

-20-

Even if such an accommodation would be relevant to undue hardship, the only admissible evidence that Dr. Bushra presents as to this alleged religious accommodation is what purports to be the partially-redacted application of the Roman Catholic individual. All other information as to this individual and any accommodation is based on Dr. Bushra's testimony at his deposition. The testimony is inadmissible hearsay. See Fed. R. Civ. P. 801, 802. It is offered for the truth and based upon what others told him. See Fed. R. Civ. P. 801(c). He does not have any relevant firsthand knowledge on this subject, and he made no attempt to obtain further evidence on this subject from MLH.

MLH has established that it would suffer undue hardship, as defined in Groff, if it were required to accommodate any sincerely-held religious belief of Dr. Bushra. See 600 U.S. at 470. There is no evidence to the contrary to create a genuine dispute of material fact. The motion of MLH for summary judgment will be granted.

Appx024